UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GINA D.,[1]

                              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

**DECISION AND ORDER**

1:19-cv-01241 (JJM)

        This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security that plaintiff did not have a disability, and

was not entitled to disability insurance benefits ("DIB"), for the period April 2, 2011 through

December 31, 2016.  Before the court are the parties' cross-motions for judgment on the

pleadings [8, 9].[2]  The parties have consented to my jurisdiction [11].  Having reviewed the

parties' submissions [8, 9, 10], the Commissioner's motion is granted, and plaintiff's motion is

denied.

### BACKGROUND

        The parties' familiarity with the 1,529-page administrative record ([4], [4-1])

(collectively, the "Administrative Record"[3]) is presumed.  Plaintiff filed an application for DIB

---

[1]        In accordance with the guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Western District
of New York on November 18, 2020 in order to better protect personal and medical information of non-
governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]        Bracketed references are to CM/ECF docket entries. Unless otherwise indicated, page references
are to CM/ECF pagination (upper right corner of the page).

[3]        Page references to the Administrative Record refer to the page numbers reflected in the
Administrative Record itself (bottom right corner of the page).

alleging a disability beginning on April 2, 2011. Administrative Record, p. 967. This matter was previously remanded from this Court following stipulation by the parties. Id., pp. 1052 (Stipulation and Order for Remand) and 1057-60 (Order of Appeals Council Remanding Case to Administrative Law Judge).

   An administrative hearing was held on March 14, 2019. See id., pp. 988-1021 (transcript of hearing). Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Timothy McGuan. See id. Both plaintiff and a vocational expert testified. See id., pp. 992-11020. On May 16, 2019, ALJ McGuan issued a decision finding that plaintiff "was not under a disability, as defined in the social Security Act, at any time from April 2, 2011, the alleged onset date, through December 31, 2016, the date last insured". Id., p. 979. Neither party has raised an issue concerning failure to exhaust to administrative remedies or timely filing. Therefore, although not reflected in the Administrative Record, I presume that the Appeals Council declined to assume jurisdiction, or denied a timely request for review. Plaintiff initiated this action on September 13, 2019.

A.  **ALJ McGuan's Decision**

   ALJ McGuan found that plaintiff's severe impairments were "right shoulder problems, status post rotator cuff repair; lumbosacral degenerative disk disease; chondromalacia of patella; and obesity".[4] Id., p. 969. The record contains the following medical opinions concerning plaintiff's functional limitations:

---

[4] ALJ McGuan considered, but rejected as severe impairments, a number of other conditions, including mental health impairments. Id., pp. 969-972. To account for plaintiff's non-severe mental condition, "additional mental limitations were incorporated into the residual functional capacity in order to compensate for pain and side-effects from medication". Id., p. 972. Neither plaintiff nor the Commissioner challenge ALJ McGuan's findings concerning severe impairments.

1.      Consultative Examiner Samuel Balderman, M.D. examined plaintiff on April 11, 2012.  Administrative Record, pp. 603-606.  Plaintiff identified "main medical problems of right shoulder pain, lumbar spine pain, and neck pain".  Dr. Balderman noted that plaintiff had surgery to her right shoulder four months prior to the exam.  Plaintiff described her shoulder pain as "intermittent and moderate in intensity".  Id., p. 603.  She described "constant, shooting, and sharp" pain in her lumbar and cervical spine.  Upon examination, plaintiff had a normal gait and could "walk on heels and toes without difficulty".  Id., p. 604.  She could do a full squat.  Id.  Upon examination, she had full range of motion ("ROM") in her cervical spine, but had flection to only 80 degrees in her lumbar spine with full range of motion in lateral and rotary movements.  Id., p. 605.  Her straight leg raise test was negative bilaterally.  She exhibited full ROM in her left shoulder, but had elevation to only 100 degrees in her right shoulder.  Id.  She exhibited full ROM elsewhere, including her hips and knees bilaterally.  Id.  Plaintiff's hand and finger dexterity was intact and her grip strength was 5/5 bilaterally.  Id.

Dr. Balderman opined that plaintiff had "moderate to marked limitation[s] in reaching, pushing, and pulling, due to recent right shoulder surgery.  Limitation should improve over the next three to four months".  Id.

2.      Plaintiff's treating physician, Daniel R. Wild, M.D. noted in several of his treatment notes that the plaintiff was "not able to return to work at this time".  *See* Id., pp. 921 (11/26/2013 Progress Note), 702 (8/20/2012 Progress Note).  ALJ McGuan assigned Dr. Wild's opinion "some weight" "based on examination findings", but did not further elaborate.[5]  Id., p. 977.

---

[5]      Plaintiff does not challenge the weight that ALJ McGuan assigned to Dr. Wild's opinion.

3.      Plaintiff's treating physician Walter A. Balon, M. D. stated in a treatment note on 2/13/2012 that plaintiff had sciatica and lumbar spinal stenosis, for which he prescribed an opioid medication:  hydrocodone-acetaminophen.  He stated that plaintiff was "still disabled secondary to injuries of the MVA".  Id., p. 712.  ALJ McGuan gave "some weight to the opinion of Dr. Ba[l]on, based on examination findings but notes that opinions as to the ultimate issue of disability are reserved for the Commissioner."[6]

Based upon the medical evidence and plaintiff's testimony, ALJ McGuan concluded that plaintiff had the residual functional capacity ("RFC") to perform light work, with several modifications:

> "[C]laimant has the residual functional capacity to light work . . . except can sit up 1 hour at a time, stand and/or walk up to 45 minutes; would need a sit/stand option after 45 minutes, can lift 20lbs occasionally and 10lbs frequently; and can reach in all directions occasionally with the upper extremities; can occasionally stoop, squat, kneel, crouch, crawl.  Can frequently finger and handle with the right upper extremity and push/pull with the right upper extremity.  Can do simple unskilled work. "

Id., p. 973.

## ANALYSIS

### A.      Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error."  Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion".  Consolidated Edison Co. of New York. Inc. v. NLRB, 305

---

[6]      Plaintiff does not challenge the weight that ALJ McGuan assigned to Dr. Balon's opinion.

U.S. 197, 229 (1938).  It is well settled that an adjudicator determining a claim for DIB and/or

SSI employs a five-step sequential process.  Shaw, 221 F.3d at 132; 20 C.F.R. §§ 404.1520,

416.920.  The plaintiff bears the burden with respect to steps one through four, while the

Commissioner has the burden at step five.  *See* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir.

2012).

**B.      Was Dr. Balderman's Report Stale?**

            "A stale medical opinion does not constitute substantial evidence to support an

ALJ's findings." Clute ex rel. McGuire v. Commissioner of Social Security, 2018 WL 6715361,

*5 (W.D.N.Y. 2018).  However, "[t]he mere passage of time does not render an opinion stale.

Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's

condition has deteriorated." Whitehurst v. Berryhill, 2018 WL 3868721, *4 (W.D.N.Y. 2018);

Cruz v. Commissioner of Social Security, 2018 WL 3628253, *6 (W.D.N.Y. 2018) (a

"consultative examination is not stale simply because time has passed, in the absence of evidence

of a meaningful chan[ge] in the claimant's condition"). *See also* Pritchett v. Berryhill, 2018 WL

3045096, *8 (W.D.N.Y. 2018) ("[i]f a claimant's status regarding her impairments undergoes

'significant deterioration' after a consultative examination, the examination may not constitute

substantial evidence"). "A medical opinion based on only part of the administrative record may

still be given weight if the medical evidence falling chronologically . . .  after the opinion

demonstrates substantially similar limitations and findings." Pritchett, 2018 WL 3045096, *8.

            Plaintiff's primary argument is that ALJ McGuan improperly relied upon Dr.

Balderman's opinion because it was stale and, therefore, there was not substantial evidence to

support the RFC determination.  Memorandum of Law [8-1], pp. 15-20.  Specifically, plaintiff

argues that Dr. Balderman's opinion was rendered stale, and thus incapable of satisfying the

substantial evidence standard, "based on evidence of record demonstrating the lack of improvement in [p]laintiff's shoulder". Id., p. 17. While conceding that "[t]his opinion constitutes the only physical function by function opinion contained within the evidence of record", plaintiff points to medical evidence in the record demonstrating ongoing complaints of right shoulder pain. Id., pp. 18-19; *citing* Administrative Record, pp. 938-939. Plaintiff argues, "[o]bviously, based upon the above evidence, Dr. Balderman's opinion, that Plaintiff's shoulder 'limitations should improve over the next 3 to 4 months,' has been rendered stale by the lack of evidence of any sort of improvement". Id., p. 19.

In addition, she asserts that Dr. Balderman's opinion was rendered stale because plaintiff "developed more issues that were not present during" Dr. Balderman's examination, including degenerative disc changes in her lumbar spine, left knee issues, and bilateral hip pain. Id., pp. 19-20, *citing* Administrative Record, pp. 725 (a 2/19/2013 MRI report showing degenerative changes at L3-4 and L5-S1 with a "mild annular bulge" at L3-4 and a "small midline disc herniation" at L5-S1), 784 (a 7/24/2013 MRI report showing chondromalacia of the patellofemoral joint, degenerative changes, and a "small joint effusion" of the left knee), 785-86 (a 7/24/2013 treatment note from Dr. Balon documenting plaintiff's knee injury), and 938 (a 5/23/2014 treatment note from Dr. Balon documenting complaints of bilateral hip pain and neck stiffness, with a decreased ROM in her neck and normal ROM in both of her hips). Plaintiff points to further issues with back and neck pain in December 2017 (*see* id., p. 20).

However, even if these records showed a worsening condition at that time, they post-date plaintiff's date last insured (12/31/2016) and are, accordingly, of little evidentiary value. *See* Vilardi v. Astrue, 447 F. App'x 271, 272 (2d Cir. 2012 ) (Summary Order) (noting that, because plaintiff "was required to demonstrate that she was disabled as of . . . the date on

-6-

which she was last insured", her reliance upon evidence post-dating her date last insured "is of little value").

Finally, to further support her argument, plaintiff notes that her testimony at the March 2019 hearing indicated functional impairments:

> "Plaintiff even testified . . . that she has problems sitting for a long period of time, and that she can only sit for about 45 minutes to an hour before her legs and feet start tingling and she has back pain. (Tr. 995). She also has issues with standing for periods longer than 45 minutes. (Tr. 996). She then testified that she has limited usage of both of her shoulders due to her rotator cuffs. (Tr. 997). Plaintiff also has associated numbness and tingling in her bilateral hands. (Tr. 997). Repetitive reaching is hard for her, and she cannot lift over 20 pounds. (Tr. 997). Her ability to lift up is limited because her shoulders will lock up on her. (Tr. 998). She even stated that it is hard for her to wash her hair, and that she sometimes cannot even tie her shoes. (Tr. 998)."

Id., p. 20.

As plaintiff acknowledges, "the mere passage of time" is insufficient to render an opinion stale. Whitehurst, 2018 WL 3868721 at *4; *see also* Plaintiff's Memorandum of Law, p. 17. "Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." Whitehurst, 2018 WL 3868721, *4. For example, a consultative examiner's opinion has been found stale and insufficient to properly support an RFC finding where it was based upon an examination conducted months prior to a plaintiff's back surgery. *See* Moon v. Commissioner, 2019 WL 2240235, *6 (W.D.N.Y. 2019). Similarly, this court has also found a consultative examiner's opinion to be stale where it was issued before a plaintiff's degenerative disc disease became symptomatic. *See* Hawkins v. Colvin, 2016 WL 6246424, *3 (W.D.N.Y. 2016) ("[t]he Court also agrees that the consultative medical examination report was issued prior to Plaintiff's degenerative disc disease becoming symptomatic"). With respect to knee injuries, this court found stale a consultative examiner's opinion concerning a plaintiff's

ability to stand and walk where, two years following the consultative examination, plaintiff sustained a knee injury and underwent two arthroscopic knee surgeries.  *See* Biro v. Commissioner, 335 F.Supp.3d 464, 471 (W.D.N.Y. 2018) ("[a] stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding").

Here, plaintiff had no surgery subsequent to Dr. Balderman's April 11, 2012 opinion.  Further, plaintiff does not cite to any portion of her medical records that demonstrate the "meaningful deterioration" required to render stale a functional assessment.  Whitehurst, 2018 WL 3668721, *4 ("[h]ere, the record indicates that [p]laintiff's condition showed no meaningful deterioration following Dr. Liu's examination").  Plaintiff fails to point to any medical evidence in this voluminous record demonstrating functional impairments beyond those assessed by ALJ McGuan.

Under similar circumstances, this court has found that medical opinions are not stale.  For example, in Carney v. Berryhill, 2017 WL 2021529 (W.D.N.Y. 2017), the ALJ, in his September 2014 opinion, relied upon the September 2012 opinion of Dr. Liu to craft an RFC. Plaintiff argued that the ALJ erred because Dr. Liu's opinion was stale, asserting that her neck and knee conditions had deteriorated after Dr. Liu's examination.  The court disagreed and pointed out that the records plaintiff cited in support of her contention that her neck condition had deteriorated "contain relatively benign findings", such as "residual chronic neck pain" which, the court noted, "seems to demonstrate that her neck pain persisted, not that her condition was deteriorating".  Id., *6.  Further, the court noted that Dr. Liu had, in fact, considered plaintiff's neck condition because he noted in his report that plaintiff "had chronic neck pain that radiated to her shoulders".  Plaintiff's knee injury occurred six months after Dr. Liu's examination.  However, "the ALJ discussed [plaintiff's] knee condition at length in another

portion of his decision". Id.   For example, the ALJ had cited medical records concerning

examination of plaintiff's knee and noted plaintiff's own reports of improvement of her knee

condition and participation in activities such as "riding her bike and participating in physical

therapy."   The court concluded that "it is clear that the ALJ was fully aware of [plaintiff's] knee

condition when he weighed Dr. Liu's opinion."   Id.   For these reasons, the court found "that Dr.

Liu's opinion was not stale and that the ALJ did not er when he gave significant weight to that

opinion because it was consistent with Dr. Liu's clinical examination and with the record as a

whole."   Id., p. *7.

   The record here is similar in these respects to the record in Carney, supra.  Here,

Dr. Balderman explicitly considered plaintiff's neck and back conditions.  He noted in his report

that plaintiff's "main medical problems" include both "lumbar spine pain, and neck pain."

Administrative Record, p. 603.  On examination, plaintiff exhibited full cervical ROM, and her

lumbar ROM was at the lowest limit of normal on flexion (80 degrees)[7].  Further, ALJ

McGuan's analysis demonstrates that he considered medical records from plaintiff's treating

physicians concerning her neck, back, knee, and hip complaints:

- Follow-up visit with Dr. Balon on January 9, 2012, noted decreased range of motion in right and left hip, lumbar back . . . Dr. Balon assessed . . . sciatica". Id., p. 975.

- Follow-up visit on June 7, 2012 [with Dr. Wild], noted the claimant presented with back pain . . . On examination, lumbar flexion was notable for the ability to reach fingertips to the mid-thigh level . . . There was a negative straight leg raising findings.  Treatment recommendation was

---

[7] "Normal range of motion for lumbar flexion is approximately 80–90 degrees, and the normal range of motion for lumbar extension is approximately 20–25 degrees. See Son Oh v. Murray, 2009 WL 605796, at *6 n. 7 (E.D.N.Y. 2009) (quoting normal ranges cited by Plaintiff's physician as 80 and 25 degrees, respectively); Walker v. Astrue, 2009 WL 2252737, *5 (E.D.N.Y. 2009) (indicating that normal range is 90 and 20 degrees, respectively)." Acevedo v Colvin, 20 F. Supp.3d 377, 383 (W.D.N.Y. 2014).

home exercise program.  An imaging of the cervical spine dated August 6, 2012 was normal".  <u>Id.</u>, p. 974.

- "claimant was evaluated on August 7, 2012, for treatment of low back and knee pain".  <u>Id.</u>, p. 976.

- "Follow-up visit with Dr. Balon, MD, on October 31, 2012, noted the claimant continued to have posterior neck pain, right shoulder pain, lower back pain and left knee pain . . . Dr. Balon, MD, assessed the claimant with cervical spinal stenosis, lumbar spinal stenosis, rotator cuff sprain and rotator cuff tear, left knee injury and bursitis of the left hip . . . causing disability.  Treatment recommendation was for physical therapy and pain medication".  <u>Id.</u>, p. 976.

- "Follow-up visit with Dr. Wild on March 29, 2013, noted the claimant's complaints of severe pain in the right shoulder, which has persisted for over a month".  <u>Id.</u>, p. 975.

- "Dr. Conway examined the claimant on May 21, 2013, for her complaints of low ack pain with radiation into the lower extremities . . . Dr. Conway assessed the claimant with lumbar degenerative disc disease: small L5-S1 disc herniation: no evidence of active lumbar radiculopathy  . . . Dr. Conway told the claimant that her lumbar disc herniation was very small, and not causing radiculopathy.  Administrative Record, p. 974.

ALJ McGuan also noted references in the medical records concerning plaintiff's activities, including dancing (<i>see</i> <u>id.</u>, 977) and doing yoga (<i>see</i> <u>id.</u>).  Accordingly, as in <u>Carney</u>, <u>supra</u>, and notwithstanding the age of Dr. Balderman's opinion, I find that it is consistent with the record as a whole and not stale with respect to plaintiff's impairments prior to her date last insured.

Plaintiff argues that her own testimony supports a finding of greater limitations. Although ALJ McGuan found that the plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms" were "inconsistent" with the record, he incorporated most of them into the RFC limitations that closely mirror plaintiff's testimony.  Administrative Record, p. 974.  For example, plaintiff testified that she can sit for 45 to 60 minutes and stand for 45

-10-

minutes.  Administrative Record, pp. 995-96; Plaintiff's Memorandum of Law [8-1], p. 20.  The

RFC includes a limitation for sitting up to 1 hour and walking up to 45 minutes.  Administrative

Record, p. 973.  Plaintiff testified she has limited usage of both her shoulders due to her rotator

cuffs, has difficulty with repetitive reaching, and that her ability to lift up is limited because her

shoulders lock up on her.  Plaintiff's Memorandum of Law [8-1], p. 20; Administrative Record,

pp. 997-998.  The RFC includes limitation for lifting up to 20 lbs. occasionally and 10 lbs.

frequently.  Administrative Record, p. 973.  It also limits reaching with the upper extremities to

"occasionally" and fingering, handling, and pushing/pulling with the right upper extremity to

"frequently".  Given that the plaintiff fails to cite to any medical evidence supporting greater

restrictions, I find that ALJ McGuan adequately accounted for the plaintiff's professed

limitations.

        Further, I disagree with plaintiff that Dr. Balderman's opinion is vague because it

"has a time limit due to his statement that 'limitations should improve over the next 3 to 4

months'" and "never actually dictates what Plaintiff's limitations would include if the supposed

improvement were to occur".  Plaintiff's Memorandum of Law [8-1], p. 21.  Elsewhere, plaintiff

asserts that "evidence shows that Plaintiff continued to have a reduced range of motion . . . after

Dr. Balderman's examination" and that the record lacked "evidence of any sort of improvement"

and that "evidence overwhelmingly demonstrated Plaintiff's right shoulder symptoms never

actually improved".  Plaintiff's Memorandum of Law [8-1], pp. 18,19, 20. Although plaintiff

argues that "the ALJ should have recontacted Dr. Balderman to clarify the opinion" (id., p. 22),

because plaintiff asserts that her shoulder condition never improved after Dr. Balderman

examined her, it is unclear to me what information in the record would have necessitated that

ALJ McGuan recontact Dr. Balderman.

Under the circumstances of this case, I find that Dr. Balderman's opinion was not stale and that the record provided substantial evidence to support the ALJ's RFC determination. *See* Carney, supra.  Accordingly, I do not reach plaintiff's remaining argument that, because Dr. Balderman's opinion was not substantial evidence to support the RFC, the ALJ was required to further develop the record and relied upon his own lay opinion to develop the RFC.  *See* Plaintiff's Memorandum of Law [8-1], pp. 22-24.  This argument is premised upon a contrary finding.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [9] is granted, and plaintiff's motion [8] is denied.

**SO ORDERED**.

Dated: March 24, 2021

                                                                                     /s/ Jeremiah J. McCarthy
                                                                                    JEREMIAH J. MCCARTHY
                                                                                    United States Magistrate Judge